Dan Stormer, Esq. [S.B. # 101967]
David Clay Washington, Esq. [S.B. #305996]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
        dwashington@hadsellstormer.com

Attorneys for Plaintiff
CHRISTIAN PINEDA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN PINEDA, | Case No.: 2:21-cv-06470-CBM-ASx |
| Plaintiff, | [Assigned to the Honorable Consuelo B. Marshall – Courtroom 8D] |
| v. | **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| CITY OF LOS ANGELES; CHIEF MICHEL MOORE; COLTON HANEY and STEPHEN MCCLEAN, | **Pretrial Conference:** |
| Defendants. | DATE:     February 21, 2023 |
| | TIME:     2:30 p.m. |
| | CRTRM:    8D (First Street Courthouse) |
| | |
| | Complaint filed:    August 11, 2021 |
| | Discovery Cut-Off:  July 29, 2022 |
| | Motion Cut-Off:     November 8, 2022 |
| | Trial Date:         March 7, 2023 |

# TABLE OF CONTENTS

**Page(s)**

1.  Claims and Defenses (L.R. 16-4.1)............................................................1

    (a)   A summary statement of the claims Plaintiff has pleaded and
          plans to pursue ............................................................................1

    (b-c) The elements required to establish Plaintiff's claims and a brief
          description of the key evidence in support of each of the claims.................1

    Elements of these Claims...............................................................1

    Claim 1: Plaintiff Christian Pineda has claims for Excessive Force
    (42 U.S.C. § 1983 4th and 14th Amendments) against Defendants
    Haney and McClean.....................................................................1

    Elements Required to Establish Plaintiff Estate's Claim No. 1.............................1

    Key Evidence in Support of Claim 1 ......................................................4

    Claim 2: Plaintiff Christian Pineda has claims for Failure to Intervene
    (4th and 14th Amendments; 42 U.S.C. § 1983) against Defendant McClean......14

    Elements Required to Establish Plaintiff Estate's Claim No. 2............................14

    Key Evidence in Support of Claim 2 .....................................................15

    Claim 3: Plaintiff Christian Pineda has claims for Freedom of Speech
    (1st and 14th Amendments; 42 U.S.C. § 1983) against Defendants Haney
    and McClean .............................................................................15

    Elements Required to Establish Plaintiffs' Claim No. 3 ..................................15

    Key Evidence in Support of Claim 3 .....................................................16

    Claim 4(a): Plaintiff Christian Pineda has claims for Municipal Liability—
    Unconstitutional Policy, Practice, Custom (42 U.S.C. § 1983) against
    Defendant City ..........................................................................16

Elements Required to Establish Plaintiff's Claim No. 4(a) .................................. 16

Key Evidence in Support of Claim 4(a) ............................................................... 16

Claim 4(b): Plaintiff Christian Pineda has claims for Municipal Liability—
Act of Final Policymaker (42 U.S.C. § 1983) against Defendant City ............... 17

Elements Required to Establish Plaintiff's Claim No. 4(b) .................................. 17

Key Evidence in Support of Claim 4(b) .............................................................. 17

Claim 5: Plaintiff Christian Pineda has a claim for Municipal Liability—
Ratification (42 U.S.C. § 1983) against Defendant City ..................................... 17

Elements Required to Establish Plaintiff's Claim No. 5 ...................................... 18

Key Evidence in Support of Claim 5 .................................................................... 18

Claim 6(a): Plaintiff Christian Pineda has claims for Municipal Liability—
Failure to Train, Supervise, Discipline, or Correct (42 U.S.C. § 1983)
against Defendant City ..................................................................................... 18-19

Elements Required to Establish Plaintiff's Claim No. 6(a) .................................. 19

Key Evidence in Support of Claim 6(a) ............................................................... 19

Claim 6(b): Plaintiff Christian Pineda has claims for Failure to Train,
Supervise, Discipline, or Correct (42 U.S.C. § 1983) against Defendant
Moore .................................................................................................................... 19

Elements Required to Establish Plaintiff's Claim No. 6(b) .................................. 19

Key Evidence in Support of Claim 6(b) ............................................................... 20

Claim 6(c): Plaintiff Christian Pineda has claims for Failure to Train,
Supervise, Discipline, or Correct (42 U.S.C. § 1983) against Defendant
McClean .......................................................................................................... 20-21

Elements Required to Establish Plaintiff's Claim No. 6(c) .................................. 21

Key Evidence in Support of Claim 6(c) ............................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(d-f)   A summary statement of the affirmative defenses Defendants have pleaded and a brief description of the key evidence in opposition to each of the affirmative defenses ............................................ 22

AFFIRMATIVE DEFENSES RAISED BY ALL DEFENDANTS ................................ 22

Affirmative Defense No. 1 .................................................................. 22

    Key Evidence in Opposition to No. 1 ................................................ 22

Affirmative Defense No. 2 .................................................................. 23

    Key Evidence in Opposition to No. 2 ................................................ 23

Affirmative Defense No. 3 .................................................................. 23

    Key Evidence in Opposition to No. 3 ................................................ 23

Affirmative Defense No. 4 .................................................................. 23

    Key Evidence in Opposition to No. 4 ................................................ 23

Affirmative Defense No. 5 .................................................................. 24

    Key Evidence in Opposition to No. 5 ................................................ 24

Affirmative Defense No. 6 .................................................................. 24

    Key Evidence in Opposition to No. 6 ................................................ 24

Affirmative Defense No. 7 .................................................................. 24

    Key Evidence in Opposition to No. 7 ................................................ 24

Affirmative Defense No. 8 .................................................................. 24

    Key Evidence in Opposition to No. 8 ................................................ 25

Affirmative Defense No. 9 .................................................................. 25

    Key Evidence in Opposition to No. 9 ................................................ 25

Affirmative Defense No. 10 ................................................................................25

    Key Evidence in Opposition to No. 10 ................................................26

Affirmative Defense No. 11 ................................................................................26

    Key Evidence in Opposition to No. 11 ................................................26

Affirmative Defense No. 12 ................................................................................26

    Key Evidence in Opposition to No. 12 ................................................26

Affirmative Defense No. 13 ................................................................................27

    Key Evidence in Opposition to No. 13 ................................................27

Affirmative Defense No. 14 ................................................................................27

    Key Evidence in Opposition to No. 14 ................................................27

Affirmative Defense No. 15 ................................................................................27

    Key Evidence in Opposition to No. 15 ................................................27

Affirmative Defense No. 16 ................................................................................28

    Key Evidence in Opposition to No. 16 ................................................28

Affirmative Defense No. 17 ................................................................................28

    Key Evidence in Opposition to No. 17 ................................................28

Affirmative Defense No. 18 ................................................................................28

    Key Evidence in Opposition to No. 18 ................................................29

Affirmative Defense No. 19 ................................................................................29

    Key Evidence in Opposition to No. 19 ................................................29

Affirmative Defense No. 20 ................................................................................29

PLTF'S MEMORANDUM OF
CONTENTIONS OF FACT & LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Key Evidence in Opposition to No. 20 ................................................................. 29

Affirmative Defense No. 21 ................................................................................... 29

Key Evidence in Opposition to No. 21 ................................................................. 29

Affirmative Defense No. 22 ................................................................................... 30

Key Evidence in Opposition to No. 22 ................................................................. 30

Affirmative Defense No. 23 ................................................................................... 30

Key Evidence in Opposition to No. 23 ................................................................. 30

Affirmative Defense No. 24 ................................................................................... 30

Key Evidence in Opposition to No. 24 ................................................................. 30

Affirmative Defense No. 25 ................................................................................... 31

Key Evidence in Opposition to No. 25 ................................................................. 31

Affirmative Defense No. 26 ................................................................................... 31

Key Evidence in Opposition to No. 26 ................................................................. 31

Affirmative Defense No. 27 ................................................................................... 31

Key Evidence in Opposition to No. 27 ................................................................. 31

Affirmative Defense No. 28 ................................................................................... 31

Key Evidence in Opposition to No. 28 ................................................................. 31

Affirmative Defense No. 29 ................................................................................... 32

Key Evidence in Opposition to No. 29 ................................................................. 32

Affirmative Defense No. 30 ................................................................................... 32

Key Evidence in Opposition to No. 30 ................................................................. 32

Affirmative Defense No. 31 .................................................................. 32

    Key Evidence in Opposition to No. 31 ............................................ 32

Affirmative Defense No. 32 .................................................................. 33

    Key Evidence in Opposition to No. 32 ............................................ 33

Affirmative Defense No. 33 .................................................................. 33

    Key Evidence in Opposition to No. 33 ............................................ 33

Affirmative Defense No. 34 .................................................................. 33

    Key Evidence in Opposition to No. 34 ............................................ 33

Affirmative Defense No. 35 .................................................................. 34

    Key Evidence in Opposition to No. 35 ............................................ 34

Affirmative Defense No. 36 .................................................................. 34

    Key Evidence in Opposition to No. 36 ............................................ 34

Affirmative Defense No. 37 .................................................................. 34

    Key Evidence in Opposition to No. 37 ............................................ 34

Affirmative Defense No. 38 .................................................................. 35

    Key Evidence in Opposition to No. 38 ............................................ 35

Affirmative Defense No. 39 .................................................................. 35

    Key Evidence in Opposition to No. 39 ............................................ 35

Affirmative Defense No. 40 .................................................................. 35

    Key Evidence in Opposition to No. 40 ............................................ 36

Affirmative Defense No. 41 .................................................................. 36

1

Key Evidence in Opposition to No. 41 ................................................ 36

2

Affirmative Defense No. 42 ................................................................ 36

3

4

Key Evidence in Opposition to No. 42 ................................................ 36

5

AFFIRMATIVE DEFENSES RAISED ONLY BY DEFENDANTS HANEY
AND MCCLEAN ................................................................................ 37

6

7

Affirmative Defense No. 43 ................................................................ 37

8

Key Evidence in Opposition to No. 43 ................................................ 37

9

10

Affirmative Defense No. 44 ................................................................ 37

11

Key Evidence in Opposition to No. 44 ................................................ 37

12

Affirmative Defense No. 45 ................................................................ 37

13

14

Key Evidence in Opposition to No. 45 ................................................ 38

15

Affirmative Defense No. 46 ................................................................ 38

16

Key Evidence in Opposition to No. 46 ................................................ 38

17

18

Affirmative Defense No. 47 ................................................................ 38

19

Key Evidence in Opposition to No. 47 ................................................ 38

20

Affirmative Defense No. 48 ................................................................ 39

21

22

Key Evidence in Opposition to No. 47 ................................................ 39

23

(g)      Similar statements for all third parties ........................................ 39

24

25

(h)      The identification of any anticipated evidentiary issues, together
with the party's position on those issues .................................... 39

26

27

28

(i)       Identification of any issues of law, such as the proper interpretation
of a governing statue, which are germane to the case, together with
the party's position on those issues .......................................... 39

2.      Bifurcation of Issues (L.R. 16-4.3) ......................................................... 40

3.      Jury Trial (L.R. 16-4.4) ......................................................................... 40

4.      Attorneys' Fees (L.R. 16-4.5) ................................................................ 40

5.      Abandonment of Issues (L.R. 16-4.6) ..................................................... 40

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Christian Pineda hereby submits his Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4.

**1.    Claims and Defenses (L.R. 16-4.1)**

**(a)    A summary statement of the claims Plaintiff has pleaded and plans to pursue.**

Plaintiff has pled and currently plans to pursue the following claims at trial:

1.    **Claim 1:** Excessive Force (42 U.S.C. § 1983 4th and 14th Amendments)

2.    **Claim 2:** Failure to Intervene (42 U.S.C. § 1983 4th and 14th Amendments)

3.    **Claim 3:** Freedom of Speech and Association (42 U.S.C. § 1983 1st and 14th Amendments)

4.    **Claim 4:** Municipal Liability—Unconstitutional Policy, Practice, or Custom (42 U.S.C. § 1983)

5.    **Claim 5:** Municipal Liability—Ratification (42 U.S.C. § 1983)

6.    **Claim 6:** Municipal Liability—Failure to Train, Supervise, Discipline, or Correct (42 U.S.C. § 1983)

**(b-c)  The elements required to establish Plaintiff's claims and a brief description of the key evidence in support of each of the claims.**

**Elements of these Claims**

**Claim 1**: Plaintiff Christian Pineda has claims for Excessive Force (42 U.S.C. § 1983 4th and 14th Amendments) against Defendants Haney and McClean.

**Elements Required to Establish Plaintiff's Claim No. 1:**

In order to prevail on his Excessive Force claims against Defendants Haney and

McClean, Plaintiff must establish the following elements by a preponderance of the evidence:

**(1)**    Defendants Haney and/or McClean seized Plaintiff's person;

**(2)**    In seizing Plaintiff's person, Defendants Haney and/or McClean acted intentionally; and

**(3)**    The seizure was unreasonable.

If the jury finds that Defendant Haney or Officer Michael Barragan used excessive force, then in order to find Defendant McClean liable for excessive force, the jury must also find that Defendant McClean was liable as a supervisor for Defendant Haney's or Officer Barragan's acts. In order to prove this, Plaintiff must show that Defendant McClean either (1) set in motion a series of acts resulting in Defendant Haney's or Officer Barragan's excessive force or knowingly refused to terminate a series of acts resulting in Defendant Haney's or Officer Barragan's excessive force, which he knew or reasonably should have known would cause Defendant Haney or Officer Barragan to inflict constitutional injury; (2) for his culpable action or inaction in training, supervision, or control of Defendant Haney or Officer Barragan; (3) for his acquiescence in the constitutional deprivation by Defendant Haney or Officer Barragan; or (4) for conduct that shows a reckless or callous indifference to the rights of Plaintiff.

A seizure occurs when force is applied intentionally to an individual or to a group of which the individual is a part. In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest and/or in defending himself or others. Therefore, in order to prove an unreasonable seizure in this case, the Plaintiff must prove by a preponderance of the evidence that Defendant Haney used excessive force against Plaintiff when Defendant Haney shot him.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. The jury must judge the reasonableness of a particular use of force from the perspective of a reasonable officer

on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to this inquiry, an officer's subjective intent or motive is not.

In determining whether the officer used excessive force in this case, the jury should consider all of the circumstances known to the officer on the scene, including:

1.   the nature of the crime or other circumstances known to the officer at the time force was applied;

2.   whether Plaintiff posed an immediate threat to the safety of the officer or to others;

3.   whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight;

4.   the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5.   the type and amount of force used;

6.   the availability of alternative methods to subdue Plaintiff;

7.   the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

8.   whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;

9.   whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

10.  whether there was probable cause for a reasonable officer to believe that Plaintiff was committing a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that Plaintiff was committing a crime.

(Ninth Circuit Manual of Model Civil Jury Instructions §§ 9.20 & 9.25); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009); *Villanueva v. California*, 986 F.3d 1158, 1168 (9th Cir. 2021).

**Key Evidence:**

At around 4:00 p.m. on May 29, organizers and protesters arrived at Los Angeles City Hall. There was no curfew in effect that day. Even though the prior two days of "[p]rotests in Los Angeles ha[d] been largely peaceful," Defendant Chief Moore nevertheless placed LAPD on "tactical alert" at 2:20 p.m. (before the May 29 protests began), which "requires all on-duty personnel to remain on duty." According to LAPD spokesperson Tony Im, this meant that many police officers were forced to work double shifts.

Mr. Pineda's close friend Daniel Sosa invited Mr. Pineda to join him in downtown Los Angeles to in the form of peaceful protest. They parked near the Los Angeles Police Department headquarters. Mr. Pineda attended the protest to exercise his First Amendment right to publicly denounce George Floyd's killing and to protest police violence and racism. This was Mr. Pineda's first protest in over ten years. He had last protested for immigrants' rights when he was in high school.

Upon his arrival at Pershing Square, Mr. Pineda observed a large number of armed LAPD officers wearing riot gear and monitoring the peaceful crowd. Mr. Pineda protested peacefully at Pershing Square for approximately 30 minutes. As tensions rose at Pershing Square, a dispersal order was issued giving protesters ten minutes to leave the area of Fifth Street and Olive Avenue. Messrs. Pineda and Sosa immediately complied and left to continue protesting near the Staples Center.

After protesting peacefully for an hour in front of the Staples Center, Messrs. Pineda and Sosa walked two blocks to other side of the J.W. Marriott and continue their protest there. The protesters remained peaceful. After a short period of time in front of the J.W. Marriott, Messrs. Pineda and Sosa walked among a small group to the intersection of Seventh Street and Grand Avenue, where they and others continued to

protest peacefully.

77th Division's Gang Enforcement Unit ("77th GEU") included Defendant Haney and was commanded by Defendant McClean. At about 7:00 p.m., the unit arrived in downtown Los Angeles, first setting up at the intersection of 8th and Broadway. No protesters were present, and no unlawful assembly declaration had been issued for that area, nor the area where Plaintiff would be shot by Defendant Haney. Defendant City admits this fact.

Though no protesters were present at their location, 77th GEU immediately requested authorization from the Incident Commander, Deputy Chief Vito Palazzolo, to fire 37mm projectile launchers at protesters. Despite 77th GEU having (and providing) no justification for using the 37mm launchers, the request was granted. 77th GEU would go on to fire dozens of 37mm rounds at protesters throughout the evening.

Then-29-year old Defendant Haney, a marine sniper with dozens of kills but no crowd control experience, was excited and appeared ready for war. Shortly after dispatching to 8th and Broadway, he exclaimed, "I brought this [super sock shotgun] because I got 11, because I know the forty mils have what, 4 rounds 3 rounds?" When asked under oath about this statement, Officer Haney lied, stating "Well, unfortunately, I got stuck with the beanbag."

After standing around for 13 minutes, 77th GEU loaded up in their vehicles and proceeded to the intersection of Olympic Boulevard and Francisco Street, where a small group of peaceful protesters had gathered. As one of the protesters rode his bike in circles, chanting "George Floyd!" Defendant Haney thrust his baton forward in repetitive jabbing motions and joked to a fellow officer, "You ever seen a baton go through the spokes of a bike?" After about seven minutes, 77th GEU proceeded to the intersection of Georgia Street and James M. Wood Blvd, arriving at 7:30 p.m. The officers proceed to push a crowd on foot eastbound on James M. Wood to the intersection of James M. Wood and Francisco Street, again without any violence from the crowd. By 8:11 p.m., 77th GEU was standing around without a protester in sight,

1 growing frustrated by the lack of "action," with one officer musing to Defendant Haney,

2 "just waiting for one rock or one bottle."

3     At 8:19 p.m., the officers loaded up in their vehicles and proceeded to the

4 intersection of 7th Street and Olive Avenue. Shortly after arriving, Sergeants McClean

5 and Gaxiola yelled "37s up!" and Defendant Haney, who did not have a 37mm

6 launcher, rushed westbound along 7th Street toward a skirmish line comprised of a

7 separate squad where he fired two rounds at a young Black man who was running away.

8     Defendant Haney returned to his squad, which remained well behind the skirmish

9 line. Moments later, Defendant McClean admonished Defendant Haney for leaving the

10 squad, but promised him that he would soon get his desired "trigger time." Sergeant

11 Gaxiola, Defendant McClean's second in command, chimed in, saying, "You can't just

12 run out there, guys. I know you guys wanna play but we got our squad."

13     77th GEU proceeded westbound to the intersection of 7th and Grand, cut across

14 the intersection, and formed a skirmish line running east-west across the south side of

15 the intersection. The group of protesters had dwindled to only about 50 individuals,

16 appearing to be fewer than the number of officers present. Once at the intersection, 77th

17 GEU stood around confused and frustrated, with Sergeant McClean stating, "There's

18 two lieutenants here now and they can't make a decision." Defendant McClean

19 admitted at his deposition that his frustration was misplaced, that his ire should've been

20 focused on "the decision-makers," *i.e.*, "[t]he commanders in the airship" who were

21 "giving us most of the direction." After about a minute of standing around, Defendant

22 McClean ordered his officers to push the small group southbound on Grand and to "use

23 the stick." His officers complied with his orders, striking protesters, including Mr.

24 Pineda, with their batons.

25     During the sixty seconds leading up to and including his shooting by Defendant

26 Haney, Mr. Pineda was 25 feet away from the skirmish line, walking backwards with

27 his empty hands in the air. He chanted loudly and audibly to the Defendant officers,

28 "No justice no peace! We have a right to protest! Hands up don't shoot! Come on bro

shoot us, what the fuck are we doing? We have the right to protest! Is this America or is this a fucking communist country?" Hearing Mr. Pineda chanting, Defendant McClean yelled "37s up! 37s up!" Eleven seconds after Mr. Pineda asked, "Is this America or is this a fucking communist country?" Defendant Haney shot him. Mr. Pineda's clearly empty hands were in the air. Meanwhile, other officers on the skirmish line fired at least ten 37mm rounds (*i.e.*, thirty foam batons) at the group.

Defendant Haney's super sock round seared holes through Plaintiff's jacket and t-shirt, leaving a bloody welt the diameter of a billiard ball. Upon getting shot, Mr. Pineda ran back to his friend Daniel Sosa yelling, "I got shot! I got shot! I got shot bro! I got shot! I'm in pain! They fucking shot me!" He collapsed on the ground and writhed in agony. Another protester encouraged him to get up, but he couldn't, stating "Nah let them take me!" A man approached, identifying himself as a medic. Mr. Pineda told him, "I feel like I'm going into shock! I can't stop shaking!" Two more men arrived and helped Mr. Pineda up off the ground while he screamed in pain.

Seeing this group of good Samaritans helping the man he had just shot, Defendant Haney asked another officer, "Hey! What are they picking up over there?" The officer replied, "Uh, it looks like a citizen down, protester down." Defendant Haney responded only, "Oh okay," and proceeded to reload his shotgun. Neither he, nor Defendant McClean, nor any other LAPD officer attempted to assist Mr. Pineda.

Moments later Mr. Pineda hobbled over to the officers on the skirmish line, cursing, screaming, and lifting his shirt to show them his bloody wound. The officers vastly outnumbered the small group of protesters, but they offered Mr. Pineda no medical assistance. Instead, they continued to strike protesters with their batons and again began firing their weapons into the group. Afraid, Mr. Pineda and Mr. Sosa fled. It was not until after Messrs. Pineda and Sosa went home that the LAPD declared an unlawful assembly for downtown.

Mr. Pineda suffered significant physical pain and psychological suffering as a result of the aforementioned acts and failures to act of Defendants. The wound caused

by the "super sock" round with which Defendant Haney shot him broke, bled, bruised, and scabbed. For two months, Mr. Pineda felt like his insides had been rearranged by the projectile, and he suffered from tingling extremities, shortness of breath, and chest pain. The impact left a permanent scar on Mr. Pineda's abdomen. Since the incident, Mr. Pineda has suffered from loss of sleep, anxiety, fear, and anger. He is now extremely fearful of police officers and often has flashbacks of the attack, re-experiencing the trauma all over again. The incident caused Mr. Pineda to suffer from Adjustment Disorder with Anxiety.

At no point prior to Mr. Pineda's shooting did Defendants declare an unlawful assembly or issue a dispersal order for the area where he was shot. Defendant City of Los Angeles' own deposition and interrogatory responses alongside the total absence of video or audio of such an order confirm this. Even if Defendants had issued a dispersal order (they did not), it would not justify Defendant Haney's actions, as the super sock shotgun is a target-specific weapon that can be used only on "aggressive and/or combative subjects" where warnings are given before discharge. Unfortunately, LAPD training materials fail to state what "aggressive and combative" means.

According to Plaintiff's expert Roger Clark, the LAPD's actions were "in violation of well-known law enforcement tactics," and LAPD's policy regarding the use of impact weapons "provided inadequate guidance to officers on use of the weapons in protest situations." According to Mr. Clark, "the lack of adequate policy and training regarding the use of these powerful weapons, as well as a failure to prepare formal rules of engagement regarding the use of weapons at the protest, likely contributed to the officers' improper use of impact munitions."

According to LAPD training and policy, officers are not required to provide medical care to individuals who have been struck by less lethal weapons, so long as they are not placed into LAPD custody. LAPD also fails to provide its officers with any training the harm that can arise from the use of less lethal weapons. And despite ostensibly requiring annual recertifications to deploy the 37mm launcher, the LAPD

1  requires only that officers certify once, in the academy, in order to deploy the much

2  more dangerous super sock shotgun at any point during the rest of their careers.

3  Per LAPD policy, "[a]n officer shall, when feasible, give a verbal warning prior

4  to using the Beanbag Shotgun to control an individual. The warning is not required

5  when an officer is attacked and must respond to the suspect's actions. Additionally, if a

6  tactical plan requires the element of surprise to stabilize the situation, a warning is not

7  required." Yet the dozens of hours of bodyworn video produced in this case show that

8  Defendants clearly treat the warning requirement as the exception, not the rule. LAPD

9  policy also ostensibly requires that "[t]he use or non-use of the warning shall be

10 documented," including "an explanation and appropriate justification for not using the

11 warning." But the Form 214 produced in this case does not reflect a warning being

12 issued before the use of less lethal weapons, nor does it reflect any justification for this

13 failure.

14 LAPD policy also requires that "a use of force that occurs during a crowd control

15 situation … shall be reported to the immediate supervisor as soon as practical" and

16 "[t]he concerned supervisor shall document such incidents on an ICS 214 form." The

17 LAPD also has a Form 314, which is intended to correct incomplete and inaccurate

18 Form 214s. Despite Defendant Haney's admissions regarding his firing of a super sock

19 shotgun between 7th and 8th Streets on Grand Avenue (*i.e.*, his shooting of Plaintiff),

20 Defendant Haney failed to report the shooting to Defendant McClean. No amended

21 Form 214 was ever filed.

22 Additionally, officers' responsibilities to request an ambulance for a person

23 injured were not delineated in the department manual at the time, nor was the

24 requirement to report potential excessive force.

25 Despite the wild aggression displayed by 77th GEU in its response to the May 29,

26 2020 protests, despite Defendant Haney's shooting of Plaintiff and failure to report

27 same, and despite the litany of failures to comply with law and completely unenforced

28 policy on his part and the part of 77th GEU under the direction of Defendant McClean,

1 both received commendations for their "excellent display[s] of leadership,

2 professionalism, and commitment to our community for the Los Angeles 'civil unrest.'"

3      On June 30, 2020, the Los Angeles City Council ("City Council") approved a

4 motion directing the LAPD to prepare an After-Action Report reviewing the LAPD's

5 actions during the May-June 2020 protests. The City Council requested that Gerald

6 Chaleff, the author of LAPD's review of the 2007 May Day protests, lead the review.

7 The LAPD ultimately decided to conduct its own after-action review.

8      In July 2020, the Los Angeles Board of Police Commissioners asked the National

9 Police Foundation ("NPF") to conduct an after-action review assessment, and analysis

10 of the LAPD's actions during the May-June 2020 protests. The Los Angeles Police

11 Foundation funded the National Police Foundation's after-action review.

12      Mr. Chaleff and his review team prepared "An Independent Examination of the

13 Los Angeles Police Department 2020 Protest Response," ("Chaleff's After-Action

14 Report"), which was transmitted to the City Council on March 10, 2021. LAPD's after-

15 action report, "SAFE LA Civil Unrest 2020 After Action Report," ("LAPD Internal

16 After-Action Report") was released on April 9, 2021.

17      The National Police Foundation's Report, "A Crisis of Trust: A National Police

18 Foundation Report to the Los Angeles Board of Police Commissioners on the Los

19 Angeles Police Department Response to First Amendment Assemblies and Protests

20 Occurring May 27 – June 7, 2020" ("NPF After-Action Report) was released on April

21 9, 2021.

22      According to Independent Counsel Gerard Chaleff, Defendant City of Los

23 Angeles has a history of legal settlements and agreements that it entered into after

24 lawsuits were filed in connection with police conduct at large events: in 2000

25 (Democratic National Convention); 2007 (MacArthur Park incident); 2011 (Occupy

26 LA); and 2014 (Ferguson demonstrations). In each settlement, there were mandates that

27 the Department correct policy, procedures, and training regarding various components

28 of the management of protests and demonstrations. The Department did not maintain

some of the requirements from these prior settlement agreements, which in turn caused problems for the Department in 2020. Crowd control, mobile field force, mass arrest procedures and less lethal training were all insufficient.

Mr. Chaleff also documented the following deficiencies by the LAPD on May 29, 2020 and throughout the protests:

(1)    When the Department did begin to set up a command post, on Friday, May 29, the assigned personnel did not have the experience or training to execute what needed to be done to successfully run a command post.

(2)    The Department did not adequately prepare the Department command staff for events such as those faced in May-June.

(3)    The Department did not, or was not able to, isolate and arrest those criminal elements who were throwing objects, creating violence, or looting due in part to the use of antiquated tactics and lack of training on public order policing.

(4)    The Department failed to maintain requirements from prior settlement agreements related to protest response, which in turned caused problems for the Department in 2020.

(5)    Preparedness demands that an organization plan, organize, train, exercise, and evaluate performance before any event actually occurs. As such, training and exercising that at one time had been implemented should have been sustained within the Department over the years, but were not.

(6)    There was a lack of a unified message from City leaders to de-escalate the violence so that peaceful protestors could exercise their First Amendment rights.

(7)    There was a lack of firm executive-level direction to the Department command officers to prepare and plan for potential widespread civil unrest and demonstrations which contributed to the problems.

(8)    There was a lack of training to properly prepare command officers for

managing large crowds with the possibility of civil unrest and many command officers stated they did not feel confident in handling these incidents.

(9)  The deployment of less lethal munitions was not always done at the direction of a supervisor or officer. In some instances, officers were directed to be in front of a skirmish line and left to deploy less lethal tools with no direction or coordination.

(10)  Annual, hands on training on public order policing for command staff diminished over time resulting in many command staff in 2020 not being prepared for the civil unrest.

The Chaleff After-Action Report issued numerous recommendations as a result of the Department's failures during the May-June 2020 protests.

The NPF After-Action Report lists 22 findings, which include:

a.  LAPD's policies and practices "were inadequate to handle the disparate groups, or to identify leaders amongst the protesters and address the level of violence."

b.  "Some LAPD personnel had not been provided contemporary training on crowd management, mobile field force, supervision, deescalation, or the use of less-lethal instruments prior to the First Amendment assemblies and demonstrations from May 27 through June 7, 2020. Many of the LAPD training bulletins, courses, and directives related to crowd management and control were outdated."

c.  LAPD "do[es] not have one policy directing response specifically to large scale, fluid, city-wide civil unrest that turns violent or contains violence."

d.  Communication "between the Chief, his command staff, bureau commanders and field supervisors, and line officers" was inconsistent and "created significant challenges regarding: (a) identifying a cogent operating philosophy; (b) determining operations during individual shifts, including when shifts started and ended; and, (c) establishing coordination and consistency between shifts." This "impacted every component of the LAPD response" to the protests.

The NPF After-Action Report also issued numerous recommendations as a result of the Department's failures during the May-June 2020 protests.

According to the LAPD, officers deployed 11,305 rounds of "less-lethal munitions" during the May-June protests, comprised of:

      a.    4,377 37mm projectile rounds

      b.    2,621 40mm projectile rounds

      c.    4,307 beanbag shotgun rounds

The LAPD's Internal After-Action Report list recommendations in twenty-six areas of improvement. Some of these recommendations highlighted the LAPD's inadequate command and control training and deficiencies regarding communications and unity of command.

One specific recommendation is: "The Department used a significant amount of less-lethal munitions to protect the City and restore order. The Department should continue to research and seek best practices related to the deployment of less lethal munitions. This should include an examination of the Department's current less lethal capabilities and new available technologies. A clear understanding regarding when to deploy less-lethal and the level of approval necessary should be reiterated and clarified to avoid confusion. When less-lethal is deployed, when available it should be used in conjunction with BWV to capture the activity leading up to the decision to use less-lethal. Officers trained in less-lethal should attend annual weapons manipulation training."

Despite all evidence to contrary, Chief Moore stated that the "vast majority of [LAPD] personnel performed admirably" during the protests in his letter to the Police Commission accompanying the LAPD Internal After-Action Report.

The Office of the Inspector General received 2,850 personnel complaints related to the protests. The SAFE LA Task Force initiated 210 complaint investigations, of which 73 were related to excessive use of force. As of April 9, 2021, 33 of these investigations were reviewed and no allegations of unauthorized use of force were

1    sustained.

2          In the years preceding the May-June 2020 protests, the City has settled numerous

3    class action lawsuits alleging that LAPD officers used unreasonable and excessive force

4    against peaceful protestors in violation of their First and Fourth Amendment rights.

5    Defendant Moore, and the members of his command staff to whom he has delegated

6    responsibility to enact and implement lawful policies on the use of force, public order

7    policing, dispersal orders, and declarations of unlawful assembly, are aware of the

8    ongoing unlawful policies, practices, and customs of the City and the LAPD which

9    resulted in these settlements. They are also aware of the requirements that the

10   settlements imposed on them. But despite them, the unlawful policies, practices, and

11   customs continue under the City and Chief Moore's command and caused the harm

12   suffered by Mr. Pineda in this case.

13

14         **Claim 2:** Plaintiff Christian Pineda has claims for Failure to Intervene (4th and

15   14th Amendments; 42 U.S.C. § 1983) against Defendant McClean.

16         **Elements Required to Establish Plaintiff's Claim No. 2:**

17         Plaintiff contends that Defendant Haney violated Plaintiff's rights under the

18   Fourth Amendment to the United States Constitution as incorporated against the states

19   by the Fourteenth Amendment and that Defendant McClean should be held liable for

20   that violation because he failed to intervene to stop the violation.

21         Defendant McClean is liable for that violation if Plaintiff proves all of the

22   following by a preponderance of the evidence:

23         **(1)**    Defendant Haney violated Plaintiff's rights under the United States

24                 Constitution or law and/or under the California constitution of law;

25         **(2)**    Defendants McClean had a duty to intervene. Among other things, police

26                 officers have a duty to intervene to prevent the use of excessive force by a

27                 fellow officer;

28         **(3)**    Defendant McClean had a reasonable opportunity to intervene;

---

PLTF'S MEMORANDUM OF                    -14-
CONTENTIONS OF FACT & LAW

**(4)**     Defendant McClean failed to intervene.

(Third Circuit Model Jury Instruction § 4.6.2 – Failure to Intervene).

**Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First Claim for relief.


**Claim 3:** Plaintiff Christian Pineda has claims for Freedom of Speech (1st and 14th Amendments; 42 U.S.C. § 1983) Against Defendants Haney and McClean.

**Elements Required to Establish Plaintiff's Claim No. 3:**

In order to prevail on his Excessive Force claims against Defendants Haney and McClean, Plaintiff must establish the following elements by a preponderance of the evidence:

**(1)**     Plaintiff was engaged in constitutionally protected activity;

**(2)**     The actions of Defendants Haney and/or McClean against Plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity; and

**(3)**     Plaintiff's protected activity was a substantial or motivating factor in Defendants' conduct.

Public demonstrations and protests are constitutionally protected activity. "Ordinary firmness" is an objective standard that will not allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity. A substantial or motivating factor is a significant factor, though not necessarily the only factor.

If the plaintiff establishes each of the foregoing elements, the burden shifts to the defendant to demonstrate that the defendant would have taken the action(s) in question, even in the absence of any motive to retaliate against the plaintiff. If you find that the defendant is able to demonstrate this, you must find for the defendant. If you find that the defendant is not able to demonstrate this, you must find for the plaintiff.

(Ninth Circuit Model Jury Instruction § 9.11); *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 830 (9th Cir. 2020); *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

**Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First Claim for relief.

**Claim 4(a):** Plaintiff Christian Pineda has claims for Municipal Liability—Unconstitutional Policy, Practice, Custom (42 U.S.C. § 1983) against Defendant City.

**Elements Required to Establish Plaintiff's Claim No. 4(a):**

In order to prevail on his Municipal Liability—Unconstitutional Policy, Practice, Custom claim against Defendant City, Plaintiff must establish the following elements by a preponderance of the evidence:

**(1)**   Defendants Haney, McClean, and/or Moore acted under color of state law;

**(2)**   The acts of Defendants Haney, McClean, and/or Moore deprived Plaintiff of his particular rights under the laws of the United States and/or the United States Constitution;

**(3)**   Defendants Haney, McClean, and/or Moore acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the defendant City of Los Angeles; and

**(4)**   Defendant City's official policy or widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights; that is, Defendants City's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

(Ninth Circuit Model Jury Instruction § 9.5)

**Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the

evidence that supports Plaintiff's First Claim for relief.

**Claim 4(b):** Plaintiff Christian Pineda has a claim for Municipal Liability—Act of Final Policymaker (42 U.S.C. § 1983) against Defendant City.

**Elements Required to Establish Plaintiff's Claim No. 4(b):**

In order to prevail on his Municipal Liability—Acts of Final Policymaker claim against Defendant City, Plaintiff must establish the following elements by a preponderance of the evidence:

**(1)**   Defendants Moore and/or McClean acted under color of state law;

**(2)**   The acts of Defendants Moore and/or McClean deprived Plaintiff of his particular rights under the laws of the United States and/or the United States Constitution;

**(3)**   Defendants Moore and/or McClean had final policymaking authority from Defendant City;

**(4)**   When Defendants Moore and/or McClean engaged in these acts, he/they was/were acting as a final policymaker for Defendant City; and

**(5)**   The acts of Defendants Moore and/or McClean caused the deprivation of Plaintiff's rights, that is, Defendants Moore and/or McClean's acts were so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

**Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First Claim for relief.

(Ninth Circuit Model Jury Instruction § 9.6)

**Claim 5:** Plaintiff Christian Pineda has a claim for Municipal Liability— Ratification (42 U.S.C. § 1983) against Defendant City.

/ / /

**<u>Elements Required to Establish Plaintiff's Claim No. 5:</u>**

In order to prevail on his Municipal Liability—Ratification claim against Defendant City, Plaintiff must establish the following elements by a preponderance of the evidence:

**(1)** Defendants Haney, McClean, and/or Moore acted under color of state law;

**(2)** The acts of Defendants Haney, McClean, Moore deprived Plaintiff of his particular rights under the laws of the United States and/or the United States Constitution;

**(3)** Defendant City, by and through a final policymaker, acted under color of state law;

**(4)** The final policymaker ratifying the acts and/or failures to act of Defendants Haney, McClean, and/or Moore had final policymaking authority from Defendant City; and

**(5)** The final policymaker ratified the acts and/or failures to act of Defendants Haney, McClean and/or Moore, that is, the final policymaker knew of and specifically made a deliberate choice to approve their acts and/or failures to act and the bases for them.

A final policymaker may approve of acts and/or failures to act by failing to investigate and/or by knowingly conducting an inadequate investigation. (Ninth Circuit Model Jury Instruction § 9.6); *Larez v. Los Angeles*, 946 F.2d 630, 646-49 (9th Cir. 1991); *German v. Roberts*, No. C15-5237 BHS-DWC, 2017 U.S. Dist. LEXIS 126383, at *8-9 (W.D. Wash. Aug. 9, 2017).

**<u>Key Evidence:</u>**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First Claim for relief.

**<u>Claim 6(a):</u>** Plaintiff Christian Pineda has claims for Municipal Liability—Failure to Train, Supervise, Discipline, or Correct (42 U.S.C. § 1983) against Defendant

City.

**Elements Required to Establish Plaintiff's Claim No. 6(a):**

In order to prevail on his Municipal Liability—Failure to Supervise, Discipline, or Correct claim against Defendant City, Plaintiff must establish the following elements by a preponderance of the evidence:

**(1)** Defendants Moore and/or McClean acted under color of state law;

**(2)** The acts of Defendants Moore and/or McClean deprived Plaintiff of his particular rights under the laws of the United States and/or the United States Constitution;

**(3)** When Defendants Moore and/or McClean engaged in these acts, he/they was/were acting as a final policymaker for Defendant City of Los Angeles; and

**(4)** The acts of Defendants Moore and/or McClean caused the deprivation of Plaintiff's rights; that is, his/their acts was/were so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

(Ninth Circuit Model Jury Instruction § 9.6)

**Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First Claim for relief.


**Claim 6(b):** Plaintiff Christian Pineda has claims for Failure to Train, Supervise, Discipline, or Correct (42 U.S.C. § 1983) against Defendant Moore.

**Elements Required to Establish Plaintiff's Claim No. 6(b):**

In order to prevail on his Failure to Supervise, Discipline, or Correct claim against Defendant Moore, Plaintiff must establish the following elements 1-2 and any one of elements 3-7 by a preponderance of the evidence:

**(1)** Defendant Moore acted under color of state law;

**(2)**     The acts and/or failures to act of Defendant Haney and/or McClean deprived Plaintiff of his particular rights under the laws of the United States and/or the United States Constitution;

**(3)**     Defendant Moore directed his subordinates in the acts and/or failures to act that deprived Plaintiff of his rights; *or*

**(4)**     Defendant Moore set in motion a series of acts by his subordinates, or knowingly refused to terminate a series of acts by his subordinates, that he knew or reasonably should have known would cause the subordinates to deprive Plaintiff of his rights; *or*

**(5)**     Defendant Moore knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive Plaintiff of his rights and Defendant Moore failed to act to prevent his subordinates from engaging in such conduct; *or*

**(6)**     Defendant Moore disregarded the known or obvious consequence that a particular training deficiency or omission would cause his subordinates to deprive Plaintiff of his rights and that deficiency or omission actually caused his subordinates to deprive Plaintiff of his rights; *or*

**(7)**     Defendant Moore engaged in conduct that showed a reckless or callous indifference to the deprivation of the rights of others caused by his subordinates, and Defendant Moore's conduct was so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

(Ninth Circuit Model Jury Instruction § 9.4)

**Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First Claim for relief.

**Claim 6(c):** Plaintiff Christian Pineda has claims for Failure to Train, Supervise,

---

Discipline, or Correct (42 U.S.C. § 1983) against Defendant McClean.

**Elements Required to Establish Plaintiff's Claim No. 6(c):**

In order to prevail on his Failure to Supervise, Discipline, or Correct claim against Defendant McClean, Plaintiff must establish the following elements 1-2 and any one of elements 3-7 by a preponderance of the evidence:

In order to prevail on his Failure to Supervise, Discipline, or Correct claim against Defendant City, Plaintiff must establish the following elements 1-2 and any one of elements 3-7 by a preponderance of the evidence:

**(1)** Defendant McClean acted under color of state law;

**(2)** The acts and/or failures to act of Defendant Haney and/or Officer Michael Barragan deprived Plaintiff of his particular rights under the laws of the United States and/or the United States Constitution;

**(3)** Defendant McClean directed his subordinates in the acts and/or failures to act that deprived Plaintiff of his rights; *or*

**(4)** Defendant McClean set in motion a series of acts by his subordinates, or knowingly refused to terminate a series of acts by his subordinates, that he knew or reasonably should have known would cause the subordinates to deprive Plaintiff of his rights; *or*

**(5)** Defendant McClean knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive Plaintiff of his rights and Defendant McClean failed to act to prevent his subordinates from engaging in such conduct; *or*

**(6)** Defendant McClean disregarded the known or obvious consequence that a particular training deficiency or omission would cause his subordinates to deprive Plaintiff of his rights and that deficiency or omission actually caused his subordinates to deprive Plaintiff of his rights; *or*

**(7)** Defendant McClean engaged in conduct that showed a reckless or callous indifference to the deprivation of the rights of others caused by his

subordinates, and Defendant McClean's conduct was so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

(Ninth Circuit Model Jury Instruction § 9.4)

**Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First Claim for relief.

**(d-f)   A summary statement of the affirmative defenses Defendants have pleaded and a brief description of the key evidence in opposition to each of the affirmative defenses.**

As a preliminary matter, despite the majority of Defendants' "Affirmative Defenses" not being Affirmative Defenses at all (e.g., mere denials of elements of claims) and being wholly inapplicable to this lawsuit (e.g., state law immunities, which do not apply to the purely federal claims at issue in this case), Defendants have communicated no intent to withdraw or not pursue any of them. Thus, Plaintiff addresses each out of an abundance of caution.

**AFFIRMATIVE DEFENSES RAISED BY ALL DEFENDANTS:**

**Affirmative Defense No. 1.** As a separate and distinct affirmative defense, answering defendants allege plaintiff's Complaint fails to state facts sufficient to constitute a claim upon which relief can be granted.

**Key Evidence in Opposition:**

This is not an Affirmative Defense. This is a legal defense which must be raised by way of motion and ruled on by the Court. Relief based on this defense may not be sought at this late stage. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's

1  claims for relief.

2

3  **Affirmative Defense No. 2.** As a separate and distinct affirmative defense, answering

4  defendants allege plaintiff's claims against answering defendants are barred, as

5  answering defendants have qualified immunity from the allegations set forth in

6  plaintiff's Complaint.

7       **Key Evidence in Opposition:**

8       This is a legal defense which must be raised by way of motion and ruled on by

9  the Court. Relief based on this defense may not be sought at this late stage. In any

10  event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if

11  not identical to the evidence that supports Plaintiff's claims for relief.

12

13  **Affirmative Defense No. 3.** As a separate and distinct affirmative defense, answering

14  defendants allege plaintiff's Complaint, and each claim contained therein, is barred on

15  the ground that answering defendants were not the cause of any alleged damage, injury,

16  or loss to plaintiff, if any.

17       **Key Evidence in Opposition:**

18       This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's

19  claims. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense

20  is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

21

22  **Affirmative Defense No. 4.** As a separate and distinct affirmative defense, answering

23  defendants allege plaintiff's Complaint, and each claim contained therein, is barred

24  pursuant to the equitable doctrine of laches.

25       **Key Evidence in Opposition:**

26       Laches is not available as an Affirmative Defense in Section 1983 cases seeking

27  only monetary damages and/or declaratory judgment. In any event, Plaintiff's key

28  evidence in opposition to this Affirmative Defense is similar, if not identical to the

evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 5.** As a separate and distinct affirmative defense, answering defendants allege plaintiff's Complaint, and each claim contained therein, is barred pursuant to the doctrine of unclean hands.

      <u>**Key Evidence in Opposition:**</u>

      Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 6.** As a separate and distinct affirmative defense, answering defendants allege plaintiff is estopped by his own acts or omissions from recovery against answering defendants for the claims asserted in the Complaint.

      <u>**Key Evidence in Opposition:**</u>

      Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 7.** As a separate and distinct affirmative defense, answering defendants allege any injury to plaintiff was due to and caused by the negligence and omissions of plaintiff to care for himself, which carelessness and negligence and omissions were the proximate cause of the damage, if any, to plaintiff.

      <u>**Key Evidence in Opposition:**</u>

      This Affirmative Defense is not available in response to the intentional torts at issue in this case. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 8.** As a separate and distinct affirmative defense, answering defendants allege plaintiff's alleged damages, if any, contained in the Complaint, were

caused by persons and/or entities other than answering defendants, who failed to exercise ordinary care, caution, prudence, and were negligent, or acted wrongfully in their dealing with plaintiff, and that at all times, said persons or entities were acting without consent, authorization, knowledge, and/or ratification of these answering defendants. Accordingly, any recovery against answering defendants by plaintiff, if any, must be precluded and/or reduced in a proportionate amount to the fault on the part of such other person(s) and/or entities.

### Key Evidence in Opposition:

This Affirmative Defense is not available in response to the intentional torts at issue in this case. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 9.** As a separate and distinct affirmative defense, answering defendants allege that to the extent plaintiff suffered any detriment, such detriment was caused or contributed to by plaintiff's negligence, and damages, if any, should be reduced in direct proportion to his fault.

### Key Evidence in Opposition:

This Affirmative Defense is not available in response to the intentional torts at issue in this case. This is also indistinguishable from Defendants' Affirmative Defense No. 7. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 10.** As a separate and distinct affirmative defense, answering defendants allege the conduct, if any, which is the subject of plaintiff's Complaint, was absolutely and/or conditionally legally privileged, and/or justified. Further all actions by answering defendants were in good faith and reasonable.

/ / /

**Key Evidence in Opposition:**

This Affirmative Defense fails to comply with Fed. R. Civ. P. 8 in that it does not put Plaintiff on notice of the privileges it purports to raise. Additionally, "good faith" is not a defense to Constitutional violations alleged pursuant to Section 1983. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 11.** As a separate and distinct affirmative defense, answering defendants allege answering defendants are not liable in that the injuries and damages, if any, were the result of the exercise of the discretion vested in public officers and employees.

**Key Evidence in Opposition:**

This Affirmative Defense is not available in response to any of Plaintiff's claims: "Discretionary Act Immunity" does not apply in Section 1983 cases because no individual or entity has discretion to violate the Constitution. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 12.** As a separate and distinct affirmative defense, answering defendants allege answering defendants are not liable pursuant to statute by operation of California Government Code §§ 818.2 and 821 for the adoption or failure to adopt or enforce any law.

**Key Evidence in Opposition:**

This Affirmative Defense is not available in response to any of Plaintiff's claims: State law immunities do not override Section 1983 causes of action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

/ / /

**Affirmative Defense No. 13.** As a separate and distinct affirmative defense, answering defendants allege answering defendants are not liable by operation of California Government Code § 820.2 for injury resulting from an act or omission where the act or omission was the result of the exercise of the discretion vested in answering defendants, whether or not such discretion be abused.

#### Key Evidence in Opposition:

This Affirmative Defense is not available in response to any of Plaintiff's claims: State law immunities do not override Section 1983 causes of action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 14.** As a separate and distinct affirmative defense, answering defendants allege answering defendants are not liable by operation of California *Government Code* § 820.4 for the execution or enforcement of the law by public officers exercising due care.

#### Key Evidence in Opposition:

This Affirmative Defense is not available in response to any of Plaintiff's claims: State law immunities do not override Section 1983 causes of action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 15.** As a separate and distinct affirmative defense, answering defendants allege answering defendants are not liable by operation of California Government Code § 820.6 for injury caused by acts done in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable.

#### Key Evidence in Opposition:

This Affirmative Defense is not available in response to any of Plaintiff's claims:

State law immunities do not override Section 1983 causes of action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 16.** As a separate and distinct affirmative defense, answering defendants allege answering defendants are not liable by operation of California *Government Code* § 820.8, in that the injuries and damages, if any, were caused by the acts or omissions of other persons, and not answering defendants.

**Key Evidence in Opposition:**

This Affirmative Defense is not available in response to any of Plaintiff's claims: State law immunities do not override Section 1983 causes of action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 17.** As a separate and distinct affirmative defense, answering defendants allege on or about the time, date, and place alleged in plaintiff's Complaint, the conduct of plaintiff and/or third persons was of such nature as to constitute an independent, intervening, and superseding cause, which was the sole proximate cause of the injuries and damages allegedly suffered by plaintiff.

**Key Evidence in Opposition:**

This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's claims. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 18.** As a separate and distinct affirmative defense, answering defendants allege answering defendants' acts or omissions were discretionary, requiring deliberation, decision and judgment which were done honestly, reasonably and in good faith, and by virtue of which they are immune from liability.

1

**Key Evidence in Opposition:**

This Affirmative Defense fails to comply with Fed. R. Civ. P. 8 in that it does not put Plaintiff on notice of the privileges it purports to raise. Additionally, "honesty" and "good faith" are not defenses to Constitutional violations alleged pursuant to Section 1983. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 19.** As a separate and distinct affirmative defense, answering defendants allege all the claims set forth in plaintiff's Complaint are barred because plaintiff failed to take reasonable steps to mitigate his damages.

**Key Evidence in Opposition:**

Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 20.** As a separate and distinct affirmative defense, answering defendants allege plaintiff has failed to comply with the California Tort Claims Act.

**Key Evidence in Opposition:**

This not an affirmative defense that is available in response to the purely federal claims at issue in this case. Plaintiff has no key evidence in opposition to this defense because he did not file a California Tort Claim, nor was he required to in order to plead the claims at issue here.

**Affirmative Defense No. 21.** As a separate and distinct affirmative defense, answering defendants allege the Complaint, and each claim contained therein, is barred by the doctrines of collateral estoppel and res judicata.

**Key Evidence in Opposition:**

There is no evidence in this case that any of Plaintiff's claims or the issues raised by them have been previously subjected to final judgment or could have previously

been raised.

**Affirmative Defense No. 22.** As a separate and distinct affirmative defense, answering defendants allege plaintiff's action is barred by the failure of plaintiff to join, in a timely fashion, indispensable and/or necessary parties to this action.

<u>**Key Evidence in Opposition:**</u>

There is no evidence that an indispensable and/or necessary party is not a party to this action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 23.** As a separate and distinct affirmative defense, answering defendants allege the actions of answering defendants in all respects were reasonable, proper, and legal.

<u>**Key Evidence in Opposition:**</u>

This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's claims. Additionally, this Affirmative Defense fails to comply with Fed. R. Civ. P. 8 in that it does not put Plaintiff on notice of the privileges it purports to raise. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 24.** As a separate and distinct affirmative defense, answering defendants allege answering defendants' conduct did not cause the constitutional violations alleged in plaintiff's Complaint.

<u>**Key Evidence in Opposition:**</u>

This is not an Affirmative Defense. It is merely a denial of elements of Plaintiff's claims. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 25.** As a separate and distinct affirmative defense, answering defendants allege the conduct alleged in plaintiff's Complaint did not violate an interest cognizable under 42 U.S.C. § 1983.

  **Key Evidence in Opposition:**

  This is not an Affirmative Defense. It is merely a denial of elements of Plaintiff's claims. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 26.** As a separate and distinct affirmative defense, answering defendants allege plaintiff's claims are barred by the doctrine of offset.

  **Key Evidence in Opposition:**

  This Affirmative Defense is not available in response to the intentional torts at issue in this case. This is also indistinguishable from Defendants' Affirmative Defense No. 7. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 27.** As a separate and distinct affirmative defense, answering defendants allege plaintiff's claims are barred by the doctrine of release.

  **Key Evidence in Opposition:**

  There is no evidence that any liability for the claims at issue in this case have been released.

**Affirmative Defense No. 28.** As a separate and distinct affirmative defense, answering defendants allege plaintiff does not have standing to sue.

  **Key Evidence in Opposition:**

  Lack of standing is not an Affirmative Defense; it is a jurisdictional requirement. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 29.** As a separate and distinct affirmative defense, answering defendants allege that the damages, if any, should be in direct proportion to the fault of answering defendants, if any, as provided by California Civil Code §§ 1431 and 1431.5.

**Key Evidence in Opposition:**

This state law "Affirmative Defense" is not available in response to the claims at issue in this case, as federal common law principles of tort and damages govern recovery under Section 1983. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 30.** As a separate and distinct affirmative defense, answering defendants allege answering defendants are immune from liability under the provisions California Statutes, including, but not limited to the following, each of which is set forth as a separate and distinct affirmative defense: California Government Code §§ 820, 821.6, 821.8, 822.2, 850.8, 856.2, and 856.4.

**Key Evidence in Opposition:**

This Affirmative Defense is not available in response to any of Plaintiff's claims: State law immunities do not override Section 1983 causes of action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 31.** As a separate and distinct affirmative defense, answering defendants allege they are immune from the claim for relief in plaintiff's Complaint due to the application of California Code of Civil Procedure § 262.1.

**Key Evidence in Opposition:**

This Affirmative Defense is not available in response to any of Plaintiff's claims: State law immunities do not override Section 1983 causes of action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not

identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 32.** As a separate and distinct affirmative defense, answering defendants allege that under California Government Code §§ 815(b), 815.4, and 820.2, a public entity and its employees, officers, and agents are not responsible for injury and damages resulting from the act or omission that was a result of an exercise of discretion vested in such officer, employee, or agent.

> **Key Evidence in Opposition:**

This Affirmative Defense is not available in response to any of Plaintiff's claims: State law immunities do not override Section 1983 causes of action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 33.** As a separate and distinct affirmative defense, answering defendants allege plaintiff's claims are barred because answering defendants hold sovereign immunity under the Eleventh Amendment of the United States Constitution.

> **Key Evidence in Opposition:**

This Affirmative Defense is not available in response to any of Plaintiff's claims: No Defendant in this case is a "state." Rather, each individual Defendant is sued in his individual capacity and municipalities are not considered "states" nor are they protected from Section 1983 liability under the doctrine of Sovereign Immunity.

**Affirmative Defense No. 34.** As a separate and distinct affirmative defense, answering defendants allege they are not liable per the doctrine of assumption of risk.

> **Key Evidence in Opposition:**

This Affirmative Defense is not available in response to any of Plaintiff's claims: An individual may not "assume the risk" of a Constitutional violation. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not

identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 35.** As a separate and distinct affirmative defense, answering defendants allege plaintiff's claims are barred because the alleged violation of civil rights did not occur pursuant to an unconstitutional governmental policy, custom, practice, or procedure.

> **Key Evidence in Opposition:**

This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's claims. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 36.** As a separate and distinct affirmative defense, answering defendants allege the Complaint fails to state sufficient facts to entitle plaintiff to claims of punitive damages from answering defendants as a matter of law.

> **Key Evidence in Opposition:**

This is not an Affirmative Defense. This is a legal defense which must be raised by way of motion and ruled on by the Court. Relief based on this defense may not be sought at this late stage. Additionally, this Affirmative Defense is indistinguishable from Defendants' Affirmative Defense No. 1. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 37.** As a separate and distinct affirmative defense, answering Defendants allege that, in the event that they prevail at trial, or by way of dispositive motion, they will be entitled to recovery of reasonable attorneys' fees and costs under California Code of Civil Procedure § 1038 and Title 42 U.S.C. § 1988.

> **Key Evidence in Opposition:**

This is not an Affirmative Defense. It is collateral to the merits of Plaintiff's case:

1  Determinations as to any party's entitlement to attorney fees and costs are not

2  determined or awarded until after judgment. Additionally, California state law does not

3  govern entitlement to attorney fees and costs in cases raising purely federal claims. In

4  any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar,

5  if not identical to the evidence that supports Plaintiff's claims for relief.

6

7  **Affirmative Defense No. 38.** As a separate and distinct affirmative defense, answering

8  Defendants allege that the force used against Plaintiff, if any, was caused and

9  necessitated by the actions of Plaintiff and was reasonable and necessary for self-

10 defense.

11    **Key Evidence in Opposition:**

12    This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's

13 claims. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense

14 is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

15

16 **Affirmative Defense No. 39.** As a separate and distinct affirmative defense, answering

17 Defendants allege that the force used against Plaintiff, if any, was caused and

18 necessitated by the actions of Plaintiff and was reasonable and necessary for the defense

19 of others.

20    **Key Evidence in Opposition:**

21    This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's

22 claims. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense

23 is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

24

25 **Affirmative Defense No. 40.** As a separate and distinct affirmative defense, answering

26 Defendants are shielded from liability for civil damages insofar as the conduct in this

27 case did not violate any statutory or constitutional right of which a reasonable person

28 would have known.

**Key Evidence in Opposition:**

This is a legal defense which must be raised by way of motion and ruled on by the Court. Relief based on this defense may not be sought at this late stage. Additionally, this "Affirmative Defense" is indistinguishable from Defendants' Affirmative Defense No. 2. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 41.** As a separate and distinct affirmative defense, as to the federal claims and theories of recovery, the answering Defendants are protected from liability under the doctrine of absolute immunity.

**Key Evidence in Opposition:**

This Affirmative Defense is not available in response to any of Plaintiff's claims: No Defendant is sued for monetary damages in their Official Capacity. Additionally, this "Affirmative Defense" is indistinguishable from Defendants' Affirmative Defense No. 33. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 42.** As a separate and distinct affirmative defense, answering Defendants assert they are not liable for damages imposed primarily for the sake of example and by way of punishing the Defendants.

**Key Evidence in Opposition:**

This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's claims. Additionally, this Affirmative Defense fails to comply with Fed. R. Civ. P. 8 because it is unclear whether Defendants are stating that the elements necessary to establish a right to punitive damages have/can/may not be met (which is not an Affirmative Defense) or are stating that punitive damages are not available in this case (also not an Affirmative Defense). In any event, Plaintiff's key evidence in opposition

to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**AFFIRMATIVE DEFENSES RAISED ONLY BY DEFENDANTS HANEY AND MCCLEAN:**

**Affirmative Defense No. 43.** As a separate and distinct affirmative defense, Defendants allege they are not liable pursuant to California Penal Code §§ 835a, 836, 836.5(b), and 847(b), in that any physical force or contact utilized was reasonable to effect a lawful arrest, or to prevent or overcome resistance.

    **Key Evidence in Opposition:**

      This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's claims. Additionally, this Affirmative Defense is not available in response to any of Plaintiff's claims: State law immunities do not override Section 1983 causes of action. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 44.** As a separate and distinct affirmative defense, the actions of Defendants in all respects and at all relevant times were reasonable, proper, and legal.

    **Key Evidence in Opposition:**

      This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's claims. Additionally, this Affirmative Defense is identical to Affirmative Defense No. 23. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 45.** As a separate and distinct affirmative defense, Defendants are shielded from liability for civil damages insofar as the conduct in this case did not

violate any statutory or constitutional right of which a reasonable person would have known.

**Key Evidence in Opposition:**

This is a legal defense which must be raised by way of motion and ruled on by the Court. Relief based on this defense may not be sought at this late stage. Additionally, this "Affirmative Defense" is identical to Defendants' Affirmative Defense No. 40. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 46.** As a separate and distinct affirmative defense, Defendants' conduct did not cause the constitutional violations alleged in Plaintiffs' First Amended Complaint.

**Key Evidence in Opposition:**

This not an Affirmative Defense. It is merely a denial of elements of Plaintiff's claims. Additionally, this Affirmative Defense is identical to Affirmative Defense No. 24. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

**Affirmative Defense No. 47.** As a separate and distinct affirmative defense, as to the federal claims and theories of recovery, Defendants are protected from liability under the doctrine of qualified immunity.

**Key Evidence in Opposition:**

This is a legal defense which must be raised by way of motion and ruled on by the Court. Relief based on this defense may not be sought at this late stage. Additionally, this Affirmative Defense is identical to Defendants' Affirmative Defense No. 2. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

1  **Affirmative Defense No. 48.** Answering defendants allege that in the event that they

2  prevail at trial, or by way of dispositive motion, they will be entitled to recovery of

3  reasonable attorneys' fees and costs under California Code of Civil Procedure § 1038

4  and Title 42 U.S.C. § 1988.

5        <u>Key Evidence in Opposition:</u>

6        This is not an Affirmative Defense. It is collateral to the merits of Plaintiff's case:

7  Determinations as to any party's entitlement to attorney fees and costs are not

8  determined or awarded until after judgment. Additionally, California state law does not

9  govern entitlement to attorney fees and costs in cases raising purely federal claims.

10  Additionally, this Affirmative Defense is identical to Defendants' Affirmative Defense

11  No. 37. In any event, Plaintiff's key evidence in opposition to this Affirmative Defense

12  is similar, if not identical to the evidence that supports Plaintiff's claims for relief.

13

14        **(g)**    **Similar statements for all third parties.**

15        Not applicable.

16

17        **(h)**    **The identification of any anticipated evidentiary issues, together with**

18  **the party's position on those issues.**

19        The Parties have filed Motions *in limine* and motions to exclude and/or prohibit

20  certain testimony by retained experts. Contemporaneous with his filing of this

21  Memorandum of Contentions of Fact and Law, Plaintiff is filing his oppositions to

22  Defendants' motions. These motions and oppositions lay out anticipated evidentiary

23  issues and the Parties' positions on same.

24        **(i)**    **Identification of any issues of law, such as the proper interpretation of**

25  **a governing statute, which are germane to the case, together with the party's**

26  **position on those issues.**

27        None at this time.

28  / / /

**2.     Bifurcation of Issues (L.R. 16-4.3)**

Plaintiff does not request bifurcation of issues.

**3.     Jury Trial (L.R. 16-4.4)**

Plaintiff's claims are triable to a jury and Plaintiffs have made a timely demand for a trial by jury.

**4.     Attorneys' Fees (L.R. 16-4.5)**

Should Plaintiff prevail, he will request and be entitled to attorneys' fees pursuant to 42 U.S.C. §1988.

**5.     Abandonment of Issues (L.R. 16-4.6)**

Plaintiff does not abandon any of his claims. Defendants have abandoned any affirmative defense not pled in their answers (Dkts. 41 and 47). Defendants have also abandoned any relief based on failure to state a claim, the sufficiency of the pre-trial evidentiary record to support any of Plaintiff's claims, and qualified immunity due to Defendants' failure to timely raise them.

Dated: January 31, 2023          Respectfully Submitted,
                                 HADSELL STORMER RENICK & DAI LLP


                                 By: ___/s/ David Clay Washington_____
                                      Dan Stormer
                                      David Clay Washington
                                      Attorneys for Plaintiff
                                      CHRISTIAN PINEDA